OPINION
{¶ 1} Appellant Harry Blausey appeals from the judgment of the Licking County Municipal Court finding him guilty of one count of Aggravated Trespass, a misdemeanor of the first degree in violation of R.C. 2911.211(A) and one count of Intimidation of a Crime Victim or Witness, a misdemeanor of the first degree in violation of R.C. 22921.04. The appellee is the State of Ohio.
 {¶ 2} This case apparently began as a landlord-tenant dispute. Appellant owns an apartment complex. (T. at 81-82).
 {¶ 3} Martina Mendez approached appellant about renting one of the apartment units. (T. at 88). Ms. Mendez apparently told appellant that the Department of Jobs and Family Services would pay her first months rent. (Id.). However, when appellant and Ms. Mendez went to their offices, appellant was informed that Ms. Mendez had not applied for such assistance and probably would not qualify for assistance. (Id. at 88-89). As Ms. Mendez indicated she had no where to stay that night, an employee of the Department of Jobs and Family Service made arrangements for Ms. Mendez to seek assistance from the Salvation Army (Id. at 89). However, on the way to the Salvation Army location Ms. Mendez pleaded with appellant to allow her to stay the night in one of his apartment units. (Id. at 89-90). Appellant agreed to allow Ms. Mendez to stay the night in exchange for her doing some yard work for him. (Id.). Appellant informed Ms. Mendez that she could not have guests during this temporary arrangement. (Id. at 84).
 {¶ 4} On November 12, 2005 appellant was at the apartment complex when he noticed someone was in the apartment. Upon investigation appellant found that Ms. Mendez was not there but the five individuals who were at the apartment were guests of Ms. Mendez. (Id. at 85). Appellant asked the individuals to leave and they complied with his request. Upon reentering the apartment appellant testified that he could smell the odor of marijuana. (Id. at 186).
 {¶ 5} On the evening of November 13, 2005 appellant informed Ms. Mendez that she could not come back to the apartment. Further appellant changed the locks of the apartment to prevent Ms. Mendez from reentering. Appellant removed Ms. Mendez's belongings from the apartment and placed them on the street. (Id. at 27).
 {¶ 6} Ms. Mendez called the police when she was unable to gain access to her apartment. (Id.). Another tenant, Derek Freter, was assisting Ms. Mendez to gather her belongings. The police advised Ms. Mendez that she could reenter the apartment. (Id. at 29-30; 51). Apparently Ms. Mendez reentered the apartment and changed the locks to prevent appellant from entering. (T. at 87).
 {¶ 7} The next day, November 14, 2005, appellant discovered that Ms. Mendez had returned to the apartment and changed the locks. (Id. at 88). Appellant surmised that Mr. Freter was assisting Ms. Mendez to reenter the apartment. (Id. at 87). Mr. Freter's apartment contains a service area with a door to the basement of the apartment complex and a door to Ms. Mendez's apartment. (T. at 21). Mr. Freter admitted that he would let Ms. Mendez into the apartment through the service area door in his apartment. (Id. at 12; 14; 22; 23). Appellant gained access to the apartment where Ms. Mendez had been staying through the service area and placed a padlock on the inside of the front door. He then left to obtain locks to place on the service area door. When appellant returned, Ms. Mendez was inside the apartment. (Id. at 88).
 {¶ 8} That evening appellant went to the apartment of a third tenant Carson Wallace. (T. at 36-37; 41). Appellant informed Mr. Wallace about the problems he was having with Ms. Mendez. (Id.). Mr. Wallace testified that appellant further informed him that if he didn't take appellant's side in the dispute appellant would evict him. (Id. at 363-7). {¶ 9} The police were called to the apartment complex several times on November 15, 2005. (T. at 30; 31; 58). On the first occasion, Ms. Mendez's belongings had once again been put outside. (Id. at 52). The police again informed Ms. Mendez she could renter the apartment. (Id. at 52). Mr. Freter informed Ms. Mendez she could reenter her apartment through the connecting door in his apartment. (Id.). Approximately one hour later the police were again summoned to the apartment complex. (Id. at 53). Appellant was present on this occasion. (Id. at 54). Mr. Freter testified that he observed the confrontation between appellant and Ms. Mendez. (Id. at 12-13). Appellant then came to his apartment and attempted to force his way into the apartment. A scuffle ensued as Mr. Freter attempted to push appellant out of the apartment. (Id. at 13). The police informed appellant that if he returned to the property he would be arrested for aggravated trespassing. (Id. at 54-55). Appellant left the area. (Id. at 55). However, appellant returned before the officers left the scene. (Id. at 55). He questioned the officers' authority to keep him off his property, i.e. the apartment complex. The officers again informed appellant that if he returned to the complex he would be arrested. (Id. at 55). The officers followed appellant's vehicle as he left the area. (Id.). Once again appellant returned to the area. (Id. at 57). At this point appellant was arrested. (Id. at 57).
 {¶ 10} Appellant was originally charged with two counts of Aggravated Trespass and one count of Intimidation of a Crime Victim or Witness. The Aggravated Trespass charge involving Marina Menendez was dismissed by the State when she failed to appear for trial.
 {¶ 11} The remaining charges, i.e. one count of Aggravated Trespassing involving Derek Freter and one count of Intimidation of a Crime Victim or Witness involving Carson Wallace were tried to a jury. The proceedings were recorded on CD Rom. (T. at 127). After beginning deliberations, the jury returned with questions concerning whether the State introduced evidence that Carson Wallace attempted to drop the charges or attempted to change the police report. (T. at 127). The jury further requested clarification concerning the identity of the alleged victim to the intimidation charge.
 {¶ 12} In response to the jurors' questions the trial court informed the jury that they would have to "use your collective recollections to determine what was testified to here today . . ." (Id.). The trial court then informed the jury that they could request that the testimony of "a witness or a couple of witnesses" be replayed. (Id.). The trial court, over defense counsel's objection, permitted the testimony of Mr. Wallace to be replayed for the jury. (T. at 127).
 {¶ 13} The jury's also asked: "which witness was intimidated." (T. at 126). The trial court informed the jury that it could not answer that question because that could be construed as the trial court finding the appellant guilty of the offense. (Id. at 127). However the trial court continued: "Now if you're asking which witness the State is saying was intimidated, the State can answer that, which witness." (Id.). The trial court, over defense counsel's objection, permitted the prosecuting attorney to reply "Carson Wallace." (Id.).
 {¶ 14} Appellant was found guilty of both charges. The trial court sentenced appellant to a thirty day suspended jail sentence, one year probation a $300.00 fine and court costs on the count of Aggravated Trafficking, and a 60 day suspended jail sentence, counseling, one year probation a $400.00 fine and court costs on the Intimidation of a Crime Victim of Witness charge.
 {¶ 15} It is from these convictions and sentences that appellant has appealed raising the following five assignments of error for our consideration:
 {¶ 16} "I. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY PERMITTING THE JURY, DURING DELIBERATIONS AND OVER OBJECTION, TO RE-HEAR THE TRIAL TESTIMONY OF CARSON WALLACE.
 {¶ 17} "II. THE TRIAL COURT COMMITTED HARMFUL ERROR BY NOT GRANTING AN ACQUITTAL, SUA SPONTE, WHEN THE JURY, DURING DELIBERATIONS, SUBMITTED THE QUESTION, WHICH WITNESS WAS INTIMIDATED?
 {¶ 18} "III. THE GUILTY VERDICT/JUDGMENT IN THE INTIMIDATION OF WITNESS CHARGE IS NOT SUPPORTED BY THE EVIDENCE.
 {¶ 19} "IV. THE VERDICT AGAINST APPELLANT FOR AGGRAVATED TRESPASS IS CONTRARY TO LAW AND/OR APPELLANT DID NOT RECEIVE EFFECTIVE REPRESENTATION.
 {¶ 20} "V. THE TRIAL COURT COMMITTED HARMFUL ERROR AND/OR ABUSED ITS DISCRETION BY NOT FINDING THAT APPELLANT HAD THE ABILITY TO PAY A FINE AND/OR COURT COSTS IN THE INTIMIDATION OF WITNESS CHARGE".
 I. {¶ 21} In his first assignment of error appellant argues that the trial court erred when it replayed the testimony of Carson Wallace for the jury. We disagree.
 {¶ 22} It is well settled that a trial court, upon a request from the jury, "may cause to be read all or part of the testimony of any witness." State v. Berry (1971), 25 Ohio St.2d 255,267 N.E.2d 775, paragraph four of the syllabus. Moreover, the trial court has broad discretion in this regard. Id. See, also, Statev. Carter (1995), 72 Ohio St.3d 545, 560, 651 N.E.2d 965; Statev. Davis (1991), 62 Ohio St.3d 326, 340, 581 N.E.2d 1362. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217. State v. Buske, 5th
Dist. No. 2005CA00240, 2006-Ohio-2054 at ¶ 35. Appellant has failed to show that the trial court abused its discretion and offers a purely speculative claim of prejudice. Moreover, no abuse of discretion is apparent from the record.
 {¶ 23} Therefore, we overrule appellant's first assignment of error.
 II. {¶ 24} In his second assignment of error, appellant maintains that the trial court erred by not granting an acquittal, sua sponte, when the jury during deliberations submitted a question requesting a clarification of the identity of the alleged victim to the intimidation charge. We disagree.
 {¶ 25} In her opening statement to the jury, the prosecutor stated "[t]he second charge that [appellant] is here on is that he did knowingly attempt to intimidate or hinder a witness Carson Wallace . . ." (T. at 3-4). Appellant's counsel in his opening statement likewise acknowledged that Carson Wallace was the alleged victim of the intimidation charge. (Id. at 6-7). Further, in his written request for jury instructions filed January 27, 2006, three (3) days before the start of appellant's trial, appellant's trial attorney clearly identified Mr. Wallace as the alleged victim of the intimidation charge. Accordingly, no new information was provided to the jury by the trial court's actions in responding to the jurors' question. Nor can appellant argue that he was surprised or otherwise unaware that Mr. Wallace was alleged to be the victim of the intimidation charge. The testimony of Mr. Wallace was replayed to the jury after the jury was informed that he was alleged to be the victim of the intimidation charge. (T. at 128). Thereafter the jury continued their deliberations.
 {¶ 26} Appellant cites no authority for his position. This Court would note that the trial court omitted the name of the alleged victim of the intimidation charge from its instruction at the close of the case. (T. at 123-124). The jury's question may very well have been in response to this omission.
 {¶ 27} Upon review, we find no error in the trial court permitting the prosecutor to tell the jury that Mr. Wallace was alleged to be the victim of the intimidation charge.
 {¶ 28} Appellant's second assignment of error is overruled.
 III. IV. {¶ 29} In his third assignment of error appellant argues that his conviction for intimidation was against the sufficiency of the evidence. In his fourth assignment of error appellant combines his argument that his conviction for aggravated trespass was against the sufficiency of the evidence with an attempt to argue that appellant was also denied effective assistance of counsel. We disagree.
 {¶ 30} At the outset we note that appellant did not make a motion for acquittal in the trial court on either the aggravated trespass or the intimidation counts.
 {¶ 31} "In order to preserve the right to appeal the sufficiency of evidence upon which a conviction is based, a defendant must timely file a Crim. R. 29 motion for acquittal with the trial court." State v. Perry (Aug. 29, 1997), Trumbull App. No. 94-T5-165, unreported, 1997 WL 590789, at 10, citingState v. Roe (1989), 41 Ohio St.3d 18, 25, 535 N.E.2d 1351. Therefore, "[i]f a Crim. R. 29 motion is not made by a defendant, he or she waives any sufficiency of evidence argument on appeal." Id.; see also State v. Roe (1989), supra. (holding that when "appellant failed to timely file a Crim. R. 29 motion for acquittal . . . and thus failed to preserve his arguments on appeal . . .").
 {¶ 32} In the case sub judice, appellant failed to make a motion for acquittal with respect to the aggravated trespassing or the intimidation counts. Therefore, appellant did not preserve his right to appeal based upon insufficient evidence.
 {¶ 33} However, even if we were to consider appellant's sufficiency argument, we would find that the same lacks merit.
 {¶ 34} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Gulley (Mar.15, 2000), 9th Dist. No. 19600, at 3. "While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenges questions whether the State has met its burden of persuasion." State v.Thompkins (1997), 78 Ohio St.3d 380, 390. {¶ 35} In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, superseded by State constitutional amendment on other grounds inState v. Smith (1997), 80 Ohio St.3d 89. Specifically, an appellate court's function, when reviewing the sufficiency of the evidence to support a criminal conviction, is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks, supra. This test raises a question of law and does not allow the court to weigh the evidence. State v. Martin (1983), 20 Ohio App.3d 172,175. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Thompkins,78 Ohio St.3d at 386.
 {¶ 36} "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency."State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462. Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency. Cuyahoga Falls v. Scupholm (Dec. 13, 2000), 9th Dist. Nos. 19734 and 19735.
 {¶ 37} In State v. Thompkins (1997), 78 Ohio St.3d 380,678 N.E.2d 541, the Ohio Supreme Court held "[t]o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary." Id. at paragraph three of the syllabus.
 {¶ 38} R.C. 2921.04 Intimidation of Crime Victim or Witness states, in relevant part: "[n]o person shall knowingly attempt to intimidate or hinder the victim of a crime in the filing or prosecution of criminal charges or a witness involved in a criminal action or proceeding in the discharge of the duties of the witness."
 {¶ 39} Appellant argues that because Carson Wallace was not a witness to any of the actions involving appellant and Derek Fetter the intimidation charge is inappropriate.
 {¶ 40} In the case at bar, Mr. Wallace testified that on the evening before appellant was arrested, appellant came to his apartment to inform Mr. Wallace of the problems appellant was having with Ms. Mendez. (T. at 37). The following day prior to appellant's arrest, Mr. Wallace testified that appellant told him "that if I didn't side with the case that he had told me about the night before that he would also kick me out as well." (Id. at 37). Mr. Wallace further testified that ". . . I have been pretty much harassed about changing my story the entire time I have lived there . . . for like the past two months him, or his wife or the guy upstairs Don Amende will come down and say are you going to change your story . . . They kept asking me you know, will you change your story. . . ." (Id. at 38-39). The witness explained that he believed appellant was attempting to pressure him "not to drop the case but to change my story." (Id. at 47). The exchange continued:
 {¶ 41} "Q. Are you telling me that they have been trying to get you to come in here and lie to these people about what was said that night, even though that night you wrote it down in a statement?
 {¶ 42} "A. Yes and I will not change that because that is what I said.
 {¶ 43} "Q. What exactly is it that [appellant] said he wanted you to come in here and say?
 {¶ 44} "A. He wanted me to change the part where he had finally let me out of the vehicle and where I said, I think it was in the first paragraph, I can't remember exactly what I had said.
 {¶ 45} "Q. So he didn't want you to change the part where he said if you don't side with me I'm going to kick you out too.
 {¶ 46} "A. No. He just wanted me to change the story period and I said no, I can't I'm sorry."(T. at 47).
 {¶ 47} Appellant testified that he was aware Mr. Wallace had given the police a written statement. (T. at 103). Appellant further testified that he spoke with Mr. Wallace and asked him to compare the police report with the written statement. (Id. at 104). Appellant further testified "I told him that I had reason to terminate his lease at that point. If he was going to buck me on these things I could if I chose evict him based on the violations of his lease." (Id.). Appellant further testified "I didn't want Carson getting involved and forming an alliance against me." (Id. at 104). The investigating officers considered Mr. Wallace a witness. (T. at 52).
 {¶ 48} Construing the evidence in a light most favorable to the State, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant attempted to hinder a witness involved in a criminal action or proceeding in the discharge of the duties of the witness.
 {¶ 49} At the time appellant informed Mr. Wallace that he could evict him, appellant was aware that Mr. Wallace had been contacted by the police and was cooperating in their investigation. Whether appellant was attempting to dissuade Mr. Wallace from testifying unfavorably to him in this case or seeking to have Mr. Wallace testify untruthfully in his favor is inconsequential. Appellant clearly believed that Mr. Wallace would be called as a witness.
 {¶ 50} We hold, therefore, that the state met its burden of production regarding each element of the crime of Intimidation of a Crime Victim or Witness and, accordingly, there was sufficient evidence to support appellant's conviction.
 {¶ 51} Appellant further argues in his fourth assignment of error that that his conviction for aggravated trespass was against the sufficiency of the evidence. We disagree.
 {¶ 52} R.C. 2911.211 provides: "(A) No person shall enter or remain on the land or premises of another with purpose to commit on that land or those premises a misdemeanor, the elements of which involve causing physical harm to another person or causing another person to believe that the offender will cause physical harm to him".
 {¶ 53} The trial court instructed the jury that the act on the part of appellant which was alleged to have caused the victim to believe that physical harm would come to him was the crime of menacing. (T. at 122).
 {¶ 54} R.C. 2903.22, Menacing, provides: "(A) No person shall knowingly cause another to believe that the offender will cause physical harm to the person or property of such other person or member of his immediate family".
 {¶ 55} Derek Freter testified that he witnessed an altercation between appellant and Ms. Mendez. (T. at 12-13). Appellant then came to Mr. Freter's apartment and asked him if he had "did some damage to his property." (Id. at 13). Mr. Freter testified that he told appellant he did not want to talk to him at that time. (Id.). Mr. Freter testified that appellant forced his way into the apartment and a struggle ensued as Mr. Freter forced appellant back outside. (Id. at 14; 19-20). Appellant testified that, prior to attempting to gain access to the apartment, he did not tell Mr. Freter that he was there to make repairs to the unit. (T. at 101). Appellant further testified that he was asking Mr. Freter about allowing Ms. Mendez into the apartment at the time of his altercation at Mr. Freter's apartment. (Id.).
 {¶ 56} Mr. Freter testified that appellant's actions made him afraid because he did not know what appellant's intentions were in trying to force his way into the apartment. (T. at 14). Mr. Freter testified that he felt he had to defend himself in light of appellant's actions. (Id. at 15).
 {¶ 57} In Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 81, 461 N.E.2d 1273, the Ohio Supreme Court explained: "[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." See, also State v. DeHass (1967),10 Ohio St.2d 230, syllabus 1.
 {¶ 58} As an appellate court, we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v.Jeffries (February 10, 1982), Stark App. No. CA-5758. Accordingly, a judgment supported by competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.C.E. Morris Co. v. Foley Constr. (1978), 54 Ohio St. 2d 279,376 N.E. 2d 578.
 {¶ 59} Viewing this evidence linking appellant to the aggravated trespass of Mr. Freter's apartment in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crime of aggravated trespass.
 {¶ 60} We hold, therefore, that the state met its burden of production regarding each element of the crime of aggravated trespass and, accordingly, there was sufficient evidence to support appellant's conviction.
 {¶ 61} Although appellant testified that as a landlord he had a right to enter the premises and further that Mr. Freter was the aggressor, the trier of fact was free to accept or reject any and all of the evidence offered by the appellant and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". State v.Craig (Mar. 23, 2000), Franklin App. No. 99AP-739, citing Statev. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236 Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citing State v.Antill (1964), 176 Ohio St. 61, 67, 197 N.E.2d 548.; State v.Burke, Franklin App. No. 02AP-1238, 2003-Ohio-2889, citingState v. Caldwell (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. State v. Jenks (1991), 61 Ohio St. 3d 259,574 N.E. 2d 492.
 {¶ 62} We hold, therefore, that the state met its burden of production regarding each element of the crime of Aggravated Trespass and, accordingly, there was sufficient evidence to support appellant's conviction.
 {¶ 63} Finally in his fourth assignment of error appellant also attempt to raise an assignment of error based upon ineffective assistance of counsel.
 {¶ 64} We would point appellate counsel to App. R. 12(A) (2): "The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails toargue the assignment separately in the brief, as required under App. R. 16(A)." [Emphasis added].
 {¶ 65} App. R. 16(A)(7) states that appellant shall include in his brief "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies. The argument may be preceded by a summary." [Emphasis added].
 {¶ 66} An appellate court may rely upon App.R. 12(A) in overruling or disregarding an assignment of error because of "the lack of briefing" on the assignment of error. Hawley v. Ritley
(1988), 35 Ohio St.3d 157, 159, 519 N.E.2d 390, 392-393; Statev. Watson (1998), 126 Ohio App.3d, 316, 710 N.E.2d 340, discretionary appeal disallowed in (1998), 82 Ohio St.3d 1413,694 N.E.2d 75.
 {¶ 67} Accordingly, we find that appellant has failed to comply with App. R. 16(A) because he fails to separately brief this assignment of error. We nonetheless elect not to dispose of appellant's appeal based upon the deficiencies of his brief.Fuller Assoc. v. All American Home Health Care, 5th Dist. No. 2003CA00377, 2004-Ohio-4342 at ¶ 8; State v. Patterson,
5th Dist. No. 02-COA-041, 2003-Ohio-4673 at ¶ 3-5.
 {¶ 68} The standard for reviewing claims for ineffective assistance of counsel was set forth in Strickland v. Washington
(1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Ohio adopted this standard in the case of State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373. These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel.
 {¶ 69} First, we must determine whether counsel's assistance was ineffective; i.e., whether counsel's performance fell below an objective standard of reasonable representation and volatile of any of his essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudice by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. We apply the Strickland test to all claims of ineffective assistance of counsel, either trial counsel, or appellate counsel. State v.Godfrey, (Ohio App. 5 Dist. 1999) 1999 WL 770253 *1.
 {¶ 70} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley,42 Ohio St. 3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 71} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Bradley, supra at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
 {¶ 72} The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley at 143, quoting Strickland at 697. Accordingly, we will direct our attention to the second prong of the Strickland test.
 {¶ 73} Appellant argues that trial counsel was ineffective because he failed to object to the State's failure to respond to his request for a bill of particulars.
 {¶ 74} "`The failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel.'"State v. Fears (1999), 86 Ohio St.3d 329, 347, 715 N.E.2d 136, quoting State v. Holloway (1988), 38 Ohio St.3d 239, 244,527 N.E.2d 831.
 {¶ 75} The decision to forego discovery could be a sound trial strategy, albeit one that was ultimately unsuccessful. SeeState v. Williams (Mar. 27, 1991), Lorain App. No. 90CA004830, citing State v. Flors (1987), 38 Ohio App.3d 133, 139,528 N.E.2d 950. The reasonableness of counsel's determination concerning the extent, method and scope of any criminal discovery necessarily depends upon the particular facts and circumstances of each case. State v. Wilson (Oct. 22, 1992), Cuyahoga App. No. 61199; State v. Allen, 10th Dist. No. 02AP-862, 2003-Ohio-1114 at ¶ 7.
 {¶ 76} In the case at bar, the trial court file contains the police reports and witness statements utilized in appellant's case. The documents are time-stamped November 16, 2005. This was some nine (9) weeks before appellant's trial date of January 30, 2006. The record demonstrates that appellant was aware of the charges and was prepared to defend himself. On January 27, 2006 appellant's trial attorney filed "Defendant's Requested Jury Instructions." In those instructions counsel clearly identifies Derek Fretter as an alleged victim of Aggravated Trespass and further identifies the underlying misdemeanor to support the charge as menacing. Appellant has failed to demonstrate any prejudice from the failure of the State to provide a Bill of Particulars. Further the record clearly demonstrates that trial counsel was aware of the allegations underlying the charges against appellant.
 {¶ 77} Accordingly, appellant's third and fourth assignments of error are overruled in their entirety.
 V. {¶ 78} In his fifth assignment of error appellant argues that the trial court erred or abused its discretion by imposing a fine without first determining appellant's ability to pay. We disagree.
 {¶ 79} Appellant has not demonstrated any attempt had been made to collect the fines. Further the record demonstrates that appellant owns the apartment complex which is at the center of the dispute in the case at bar. No affidavit of indigence was filed in the trial court nor has one been filed in this court.
 {¶ 80} In State v. Chaney, 5th Dist. No. 2004-CAC-07057, 2004-Ohio-6712 this Court stated: "[i]n the case of State v. White, 103 Ohio St. 3d 580, 2004-Ohio-5989, the Ohio Supreme Court found a trial court may assess court costs against an indigent defendant convicted of a felony as part of the sentence. The Clerk of Courts may attempt to collect the costs from the indigent defendant. Here, the costs arose from a misdemeanor offense, but we find that fact alone does not renderWhite inapplicable here.
 {¶ 81} "R.C. 2929.18 makes a hearing discretionary when the court initially imposes a fine, but R.C. 2947.14 mandates a hearing held to determine an offender's ability to pay in the event he faces incarceration due to non-payment, see State v.Meyer (1997), 124 Ohio App. 3d 373, 706 N.E. 2d 378.
 {¶ 82} "In the event appellant is at some later time brought before the trial court for failure to pay his fine and costs, he would be entitled to a hearing as to his ability to pay. Appellant has not demonstrated any attempt to enforce the fine and costs. An attempt to enforce a fine, costs, or any other financial sanction will trigger due process and hearing requirements, see, e.g. Williams v. Illinois (1970),399 U.S. 235, 90 S. Ct. 2018, and Tate v. Short (1971), 401 U.S. 395,91 S. Ct. 668". Id. at ¶ 5-8, See also, State v. Chavers, 9th
Dist. No. 04CA0022, 2005-Ohio-714.
 {¶ 83} Recently the Ohio Supreme Court addressed the issue of assessing court cost against an indigent defendant in a criminal case. In State v. Threatt, 108 Ohio St.3d 277, 2006-Ohio-905, the Court held "[c]osts are assessed at sentencing and must be included in the sentencing entry. R.C. 2947.23. Therefore, an indigent defendant must move a trial court to waive payment of costs at the time of sentencing. If the defendant makes such a motion, then the issue is preserved for appeal and will be reviewed under an abuse-of-discretion standard. Otherwise, the issue is waived and costs are res judicata". Id. at ¶ 23.
 {¶ 84} Appellant did not move the trial court to waive the fine or court costs at the time of sentencing in the case at bar. Accordingly this issue is waived.
 {¶ 85} Appellant's fifth assignment of error is overruled.
 {¶ 86} The judgment of the Licking County Municipal Court is affirmed.
By Gwin, P.J., Hoffman, J., and Farmer, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Licking County Municipal Court is affirmed. Costs to appellant.