OPINION *Page 2 
{¶ 1} Defendant-appellant Travis Schenker appeals his conviction on one count of assault in violation of R.C. 2903.13(A), a misdemeanor of the first degree, following a jury trial. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF FACTS AND LAW {¶ 2} On January 21, 2005, appellant and two friends, Richard Conner and Jeremiah Auho, went to Colby and Company, a bar located in Dover, Ohio, to drink beer and play pool. Nicole Short and her boyfriend, William Osborne, were also playing pool at Colby and Company. Short and Osborne finished playing pool, and Osborne was conversing with the bartender while Short stood nearby and watched appellant, Conner and Auho play pool. Short told appellant and Conner "you guys suck" in reference to their pool skills. (Tr. at 19.) Conner, in an apparent effort to hit on Short, replied: "No Baby, I eat." Id.
 {¶ 3} Short, who thought Conner's comment vulgar, turned to Osborne and asked him to tell Conner that she was with Osborne, and to show her some respect. Osborne turned to Conner and said: "Look, this is my old lady, have some respect for her." Tr. at 20. Conner threw his pool stick onto the pool table and suggested the two men "take it outside". The bartender, who was also the owner of the bar, observed Conner throw down his pool stick, and threw him out of the bar. Appellant and Auho, who had come to the bar with Conner, also left. Conner told appellant and Auho he was going to look for his girlfriend at a nearby bar. Conner was actually waiting for Osborne to exit the bar. Appellant and Auho waited in Conner's car. *Page 3 
 {¶ 4} Short and Osborne left the bar approximately twenty to thirty minutes after appellant, Conner and Auho left. As Short and Osborne walked to their car, Conner jumped Osborne. While Osborne and Conner were wrestling on the icy ground, Short walked over to Conner's car, in which appellant and Auho sat, and asked appellant to help her break up the fight between Conner and Osborne. Appellant then exited the car and exchanged words with Short. Short testified that appellant puffed out his chest and bumped into her, causing her to step backward. She testified that she felt threatened, and began to swing her purse in front of her in an effort to keep appellant away from her. Appellant testified that Short was swinging her purse at him in an effort to hit him. Short testified that appellant then punched her in the jaw, causing her to drop to the ground.
 {¶ 5} Osborne testified that as he was scuffling with Conner he heard Short scream, looked over at Short and appellant, and observed appellant punch Short in the face. Three bystanders, who had observed two men scuffling on the ground and a third man punch Short, came onto the scene to assist Short and Osborne. One of the bystanders called the police. Appellant, Conner and Auho jumped into Conner's car and drove off. One of the bystanders wrote down the Conner's license plate number.
 {¶ 6} Short and Osborne were taken to the police station. The investigating officer took their statements and took photographs of their injuries. Short and Osborne were thereafter taken by Short's uncle to Union Hospital, where they were treated for their injuries and released. Short suffered an injury to her left jaw. The area was swollen and heavily bruised, and she was unable to eat for one week. The injury took over two months to heal. *Page 4 
 {¶ 7} Later the same day, Short and Osborne went back to the police station where they completed a second, more detailed report and had additional photographs taken of their injuries. A few days later, the investigating officer came to the home of Short and Osborne. The officer separated the two and showed them a photo array of suspects. Both Short and Osborne picked appellant and Conner out of the photo array, identifying them as the men who had assaulted them. The investigating officer attempted to make contact with both appellant and Conner. Conner telephoned the investigating officer and stated that neither he nor appellant struck Short, but rather, that Osborne struck her. Conner later admitted under oath that he lied to the officer, and that he, appellant and Auho had concocted the story to protect one another.[1]
 {¶ 8} On February 28, 2005, appellant was charged with two counts of assault, one as to Short and one as to Osborne, in violation of R.C.2903.13, misdemeanors of the first degree.[2] Various pre-trials were held, but the matter remained unresolved.
 {¶ 9} Thereafter, a jury trial was held on March 14, 2006, during which ten witnesses testified. Short and Osborne testified as set forth above. Conner testified that he did not punch Short, and he did not see who did, as he was on the ground fighting with Osborne. Auho testified that he witnessed Conner punch Short. Auho also admitted that the story he originally gave to the police was the story that he, appellant and Conner concocted in an effort to protect one another, and that it was untrue. He testified further that he would lie to protect the appellant, but when provided with the *Page 5 
definition of perjury and advised that perjury was a felony, he backpedaled and said he would not lie under oath. In addition, the three bystanders testified that they observed two men scuffling on the ground, and a third man strike Short. Finally, Bobbie Abel, Auho's girlfriend at the time, testified that appellant, Conner and Auho arrived at her house after the incident, and that Conner bragged about punching a girl in the face and "dropping her".
 {¶ 10} During the course of the trial, various objections were made, and the court conducted several sidebar conferences. Most of the sidebar conferences were not recorded. In addition, the prosecution became aware on the morning of trial of prior statements made by appellant and Auho. In his prior statement, Auho told the investigating officer that Conner had punched Short. Appellant claimed Auho's statement was exculpatory, and should therefore have been provided to appellant. The prosecution argued that it had only just received the statement, and provided it to appellant just before the lunch break. Auho testified after lunch, and his trial testimony did not differ from the statement.
 {¶ 11} Appellant moved for a mistrial, arguing that his trial strategy would have been different had he know about Auho's statement. Appellant did not however, request a continuance. The trial court overruled appellant's motion for a mistrial, but limited the prosecution's use of the statement.
 {¶ 12} The trial concluded and the matter was sent to the jury for deliberation. During deliberations, the jury requested that the court play back the testimony of Adam Wagner and Brandi Carpenter, two of the bystanders who had observed the assaults from afar. Appellant objected, arguing that allowing the jury to *Page 6 
hear the re-play of the testimony of said witnesses would elevate their testimony above that of the other witnesses. The trial court overruled the appellant's objection and allowed the bailiff to re-play the testimony of said witnesses for the jury.
 {¶ 13} The jury returned a verdict in which it found appellant not guilty of the assault of Osborne, but found appellant guilty of the assault of Short. Appellant appeals, and sets forth five assignments of error.
 {¶ 14} "I. THE TRIAL COURT ERRED IN NOT MAKING A COMPLETE RECORD OF ALL THE PROCEEDINGS BY NOT RECORDING SIDEBAR CONFERENCES IN VIOLATION OF CRIMINAL RULE 22.
 {¶ 15} "II. THE TRIAL COURT ABUSED ITS DISCRETION BY ALLOWING THE JURY TO REVIEW THE RECORDING OF STATE'S WITNESSES DURING ITS DELIBERATIONS, OUTSIDE THE PRESENCE OF THE COURT, COUNSEL, AND THE DEFENDANT.
 {¶ 16} "III. THE CONVICTION WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 17} "IV. THE TRIAL ERRED BY NOT GRANTING A MISTRIAL TO THE DEFENDANT WHEN THE STATE FAILED TO DISCLOSE EVIDENCE PURSUANT TO BRADY V. MARYLAND AND CRIMINAL RULE 16 AND DEFENDANT WAS PREJUDICED BY THE FAILURE TO DISCLOSE EXCULPATORY EVIDENCE.
 {¶ 18} "V. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT AND ABUSED ITS DISCRETION BY ALLOWING THE INTRODUCTION OF AND IN ADMITTING INTO EVIDENCE A PHOTO ARRAY CONTRARY TO THE *Page 7 
OHIO RULES OF EVIDENCE 403 AND 404, WHEN SUCH EVIDENCE WAS NOT RELEVANT AND ITS ADMISSION OUTWIEGHED [SIC] THE DANGER OF PREDJUDICE [SIC] TO APPELLANT RECEIVING A FAIR TRIAL."
 I {¶ 19} In his first assignment of error, appellant argues that the trial court erred in not recording the sidebar conferences in violation of Crim. R. 22. We disagree.
 {¶ 20} Crim.R. 22 provides that all proceedings shall be recorded in serious offense cases. While several sidebar conferences in the case sub judice were not recorded, any alleged error in this regard was rendered moot by virtue of appellant's supplementation of the record pursuant to App. R. 9(C).
 {¶ 21} App. R. 9(C) allows for supplementation of the record on appeal, and states: "If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. The statement shall be served on the appellee no later than twenty days prior to the time for transmission of the record pursuant to App.R. 10, who may serve objections or propose amendments to the statement within ten days after service. The statement and any objections or proposed amendments shall be forthwith submitted to the trial court for settlement and approval. The trial court shall act prior to the time for transmission of the record pursuant to App.R. 10, and, as settled and approved, the statement shall be included by the clerk of the trial court in the record on appeal."
 {¶ 22} After appellant, on November 15, 2006, filed a Motion to Supplement the Record with a 9(C) statement, this Court granted the same. Appellant *Page 8 
then filed a "Statement of Evidence" on November 28, 2006, setting forth the substances of the sidebar conferences. Therefore, any alleged error on the part of the trial court in failing to record the sidebar conferences has been rendered moot.
 {¶ 23} Accordingly, appellant's first assignment of error is overruled.
 II {¶ 24} In his second assignment of error, appellant argues that the trial court abused its discretion when it allowed the jury to hear a re-play of the testimony of two witnesses outside of the presence of the court, counsel or appellant. We disagree.
 {¶ 25} The issue of whether a jury may re-hear parts of a witness's testimony was addressed by the Ohio Supreme Court in the seminal case ofState v. Berry (1971), 25 Ohio St.2d 255, 267 N.E.2d 775. ". . . We hold that after jurors retire to deliberate, upon request from the jury a court may, in the exercise of sound discretion, cause to be read all or a part of the testimony of any witness, in the presence of or after reasonable notice to the parties or their counsel." Berry at 263. See, also, State v. Leonard, 104 Ohio St.3d 54, 2004-Ohio-6235,818 N.E.2d 229, at ¶ 123, and State v. Blausey, Licking App. No. 2006-CA-36,2006-Ohio-5536, at ¶ 21-23.
 {¶ 26} In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 27} In the case sub judice, appellant argues that the trial court abused its discretion in permitting the jury to re-hear the testimony of bystanders Wagner and Carpenter. First, appellant argues that allowing the jury to re-hear the testimony of *Page 9 
Wagner and Carpenter gave unfair weight to their testimony over that of other witnesses. Second, appellant argues that allowing the jury to re-hear said testimony was in error because neither the judge nor counsel were present during the re-hearing.
 {¶ 28} Appellant provides no support for the proposition that the testimony of Wagner and Carpenter was elevated above that of other witnesses, or of how he was prejudiced by the re-hearing of the testimony. Appellant has failed to show that the trial court abused its discretion and offers "purely speculative claims of prejudice." SeeBlausey, supra at paragraph 22.
 {¶ 29} In addition, the presence of the court and/or counsel is not required when the testimony of a witness is read or played to the jury. All that is required is that counsel be given reasonable notice of the jury's re-hearing of the witness's testimony. See Berry, supra. The supplemental record provided by appellant evidences the fact that appellant's counsel was put on notice of the jury's request to re-hear the testimony of Wagner and Carpenter.
 {¶ 30} Finally, appellant argues that the trial court abused its discretion in allowing the court bailiff to control what was heard by the jury. Appellant notes that the bailiff "controlled what the jury heard by rewinding and fast forwarding as the jury instructed him" and contends that this clearly conflicted with the instructions given to the jury that they were not to have any contact with the bailiff other than via a written note. We concur with appellee, however, that there is no evidence that the jury had any type of communication with the bailiff regarding their deliberations. Nor is there evidence that appellant was prejudiced by the bailiff's actions in rewinding and fast forwarding at the direction of the jury. *Page 10 
 {¶ 31} In short, we find that the trial court did not abuse its discretion when it allowed the jury to re-hear the testimony of Wagner and Carpenter, particularly in light of the fact that appellant offers a merely speculative claim of prejudice. The trial court's decision was not arbitrary, unconscionable or unreasonable.
 {¶ 32} Accordingly, appellant's second assignment of error is overruled.
 III {¶ 33} In his third assignment of error, appellant argues that his conviction of the assault of Short is against both the sufficiency and the manifest weight of the evidence. We disagree, and will address each of these arguments in turn.
 {¶ 34} We initially note that appellant failed to move for a Crim. R. 29(A) judgment of acquittal. Accordingly, the State argues that appellant has waived this argument on appeal.
 {¶ 35} In the past, this Court and numerous other Ohio appellate courts, relying primarily upon State v. Roe (1989), 41 Ohio St.3d 18,25, 535 N.E.2d 1351, and Dayton v. Rogers (1979), 60 Ohio St.2d 162,163, 398 N.E.2d 781, have held that if a criminal defendant fails to timely file a Crim. R. 29 motion for acquittal, the defendant waives any error, absent plain error, as to sufficiency of the evidence. See, e.g.State v. Fisher, Delaware App. No. 05 CAA 04 020, 2006-Ohio-2201;State v. Carrothers, Tusc. App. No. 2004 AP 10 0067, 2005-Ohio-4495;State v. Alicie, Knox App. No. 04-CA-000020, 2005-Ohio-1758. "In two apparently little-recognized cases, however, the Ohio Supreme Court stated that a failure to timely file a Crim.R. 29(A) motion during a jury trial does not waive an argument on appeal concerning the sufficiency of the evidence. See State v. Jones (2001),91 Ohio St.3d 335, 346, 744 N.E.2d 1163; State v. *Page 11 Carter (1992) 64 Ohio St.3d 218, 223, 594 N.E.2d 595. In bothJones and Carter, the Ohio Supreme Court stated that the defendant's `not guilty' plea preserves his right to object to the alleged insufficiency of the evidence. Id. Moreover, because `a conviction based on legally insufficient evidence constitutes a denial of due process,'State v. Thompkins (1997), 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541, a conviction based upon insufficient evidence would almost always amount to plain error". State v. Coe, 153 Ohio App.3d 44, 2003-Ohio-2732,790 N.E.2d 1222, at ¶ 19.
 {¶ 36} Thus, for purposes of this review, we do not consider appellant to have waived his right to argue sufficiency of the evidence on appeal.
 {¶ 37} Sufficiency of the evidence is a question of law on whether the evidence is legally adequate to support a jury verdict as to all elements of a crime. State v. Thompkins (1997), 78 Ohio St.3d 380, 386,678 N.E.2d 541. When reviewing the sufficiency of the evidence to support a criminal conviction, an appellate court must examine "the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 38} The weight to be given the evidence and the credibility of witnesses are primarily jury issues. State v. DeHass (1967),10 Ohio St.2d 230, 231, 227 N.E.2d 212. *Page 12 
 {¶ 39} In order to convict the appellant of assault pursuant to R.C.2903.13(A), the State had to prove beyond a reasonable doubt that appellant knowingly caused or attempted to cause physical harm to Short. Short and Osborne both testified as to the events of the night in question, and did not waiver in their assertion that appellant struck Short. Evidence regarding Short's medical injuries was submitted to the jury for consideration. Viewing the evidence most strongly in favor of the prosecution, we find that the State presented sufficient evidence as to each element of the offense of assault with which appellant was charged, and that any reasonable trier of fact could have found the elements proven beyond a reasonable doubt. Appellant's argument that the evidence was insufficient is without merit.
 {¶ 40} We next address the appellant's argument that his conviction for assault was against the manifest weight of the evidence. In considering an appeal concerning the manifest weight of the evidence, our standard is as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717. See, also, State v. Thompkins (1997), 78 Ohio St.3d 380,678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175, 485 N.E.2d 717.
 {¶ 41} Short and Osborne both testified that it was appellant who assaulted Short. While appellant presented evidence attacking their credibility, the jury *Page 13 
found their testimony credible over that of the appellant and his witnesses. Additional evidence was presented to the jury, including the testimony of the bar owner, the investigating officer, and the bystanders, who were disinterested witnesses. We find, therefore, that the jury did not lose its way such that there exists a manifest miscarriage of justice in convicting appellant of the assault of Nicole Short. The jury, as trier of fact, was in the best position to assess the credibility of the witnesses. See DeHass, supra.
 {¶ 42} Accordingly, appellant's third assignment of error is overruled.
 IV {¶ 43} In his fourth assignment of error, appellant argues that the trial court erred in denying his motion for a mistrial when the State failed to disclose statements made by appellant and Auho as required byBrady v. Maryland and Crim. R. 16. We disagree.
 {¶ 44} In Brady v. Maryland (1963), 373 U.S. 83, 83 S.Ct. 1194,10 L.Ed.2d 215, the United States Supreme Court established that the prosecution's failure to disclose evidence favorable to the accused upon request constitutes a violation of the Fourteenth Amendment's due process guarantee of a fair trial when "the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87; see, also, State v. Johnston (1988),39 Ohio St.3d 48, 529 N.E.2d 898. This opinion was incorporated into Ohio's Crim.R. 16(B)(1)(f), which provides "[u]pon motion of the defendant before trial the court shall order the prosecuting attorney to disclose to counsel for the defendant all evidence, known or which may become known to the prosecuting attorney, favorable to the defendant and material either to guilt or punishment." Brady, supra, requires the disclosure only of *Page 14 
"material" evidence, and evidence is "material" only if there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.Johnston, supra, at paragraph five of the syllabus, following UnitedStates v. Bagley (1985), 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481.
 {¶ 45} Appellant argues that he was entitled to copies of the statements because one statement was his, and because Auho's statement was exculpatory. Appellant notes that Auho, in his statement, stated that Connor was the person who assaulted Nicole Short. Appellant argues further that had he been provided with the statements earlier, his trial strategy would have been different. Appellant argues finally that because he was only provided with the statements just before the lunch break on the day of trial, that the trial court should have granted his motion for a mistrial.
 {¶ 46} We are unpersuaded by appellant's arguments. Appellant had subpoenaed each person who gave a statement to the police and, therefore, had the opportunity to speak with such persons. Appellee provided the statements to appellant when appellee became aware of them. Auho's statement was provided to appellant before Auho, who was appellant's witness, was called to testify. While appellant could have requested a recess or a continuance in order to confer with Auho prior to his taking the stand, appellant did not do so but chose instead to move for a mistrial. Further, Auho's testimony as is stated above did not differ from his statement. In both his statement to police and at trial, Auho identified Conner as the assailant. Finally, while the trial court denied appellant's motion for a mistrial, it limited appellee's use of the statements during trial. The trial court indicated that counsel for the State could use *Page 15 
such statements on cross-examination only if defense counsel opened the door by referring to the same.
 {¶ 47} Appellant's fourth assignment is, therefore, overruled.
 V {¶ 48} In his fifth assignment of error, appellant argues that the trial court erred when it allowed, over appellant's objection, the jury to view the photo array from which Short and Osborne identified appellant and Conner as their attackers. Appellant specifically contends that the admission of the photo array violated Evid. R. 403(A) because the prejudicial nature of the photo's outweighed their probative value.[3] We disagree.
 {¶ 49} Appellant argues that the photo array was unfairly prejudicial because he was wearing orange in the photo, which was a mug shot from a former incident, and orange clothing is associated with typical jail clothing.
 {¶ 50} However, we are unpersuaded by appellant's argument that the photo array was impermissibly suggestive or otherwise prejudicial. The individuals in the photo array involving appellant had almost the same haircut, and were of about the same age, race and build. Appellant was not the only one in the photo array wearing orange, as is set forth in his brief. All of the individuals in State's Exhibit C were in orange. While appellant contends that his photo was shown with other photos of police officers dressed in blue, the photos of the alleged police officers were in a separate Exhibit [State's Exhibit D] from those of the individuals in orange. Nor is it in any way obvious that such individuals were, in fact, police officers in State's Exhibit D because *Page 16 
one can only see faces and not clothing in State's Exhibit D. Finally, Nicole Short identified appellant in court as her assailant.
 {¶ 51} Moreover if we were to find that the admission of the photo array into evidence was error, any such error is harmless, as there was overwhelming evidence of appellant's guilt. In particular, Short and Osborne never wavered in their assertion that it was appellant who assaulted Short.
 {¶ 52} Accordingly, appellant's fifth assignment of error is overruled.
 {¶ 53} The judgment of the New Philadelphia Municipal Court is affirmed.
J. Hoffman, P.J. and Farmer, J. concur
 JUDGMENT ENTRY
TRAVIS S. SCHENKER
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the New Philadelphia Municipal Court is affirmed. Costs assessed to appellant.
[1] Conner pleaded guilty to assaulting Osborne in a separate case.
[2] Appellant was found not guilty of the assault of Osborne.
[3] Appellant, in his brief, also argues that admission of the photo array violated Evid. R. 404. However, there is no indication that appellant raised such argument before the trial court. We shall, therefore, not address such issue. *Page 1